UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DANIEL SCHUBMEHL and KEVIN WOODS, on
behalf of themselves and others similarly situated,

                      Plaintiffs,

      v.

SARMA MELNGAILIS, ONE LUCKY DUCK HOLDINGS,
LLC, PURE FOOD AND WINE, LLC, CGM 54 IRVING, LLC,
d/b/a PURE FOOD AND WINE, and ONE LUCKY DUCK
ECOMMERCE, LLC, jointly and severally,

                      Defendants.
-------------------------------------------------------------------------x

15 cv 6432 · VEC

AFFIDAVIT OF KEVIN
WOODS

State of New York  )
              )   ss.:
County of New York )

KEVIN WOODS, residing at 536 9th Avenue, Apt 5FS, New York, New York 10018, being duly

sworn, deposes and says:

    1.     I was an employee of Pure Food & Wine for four years, beginning in 2011.

    2.     Pure Food & Wine was a restaurant located at 54 Irving Place, New York City

and was owned by Sarma Melngailis.

    3.     Pure Food & Wine was a vegan and raw restaurant that was popular and written

about nationwide. Melngailis is the author of several cookbooks for raw and vegan cooking.

    4.     Throughout my employment with Pure Food & Wine, I personally interacted with

the owner, Sarma Melngailis. Melngailis singed my checks and was in charge of the operation of

the businesses. She planned the menus and directed the staff to do certain tasks. In her absence,

Melgailis had managers carry out the daily operations of the business.

5.      My duties at Pure Food & Wine included waiting tables, customer service, bartending, and wine ordering at the end of my tenure with the restaurant.

6.      Melngailis is also the owner of One Lucky Duck – a to-go version of her restaurant that had a juice bar and was connected to the restaurant physically.

7.      The defendants also had a website that sold food products and cosmetics. The website was known as One Lucky Duck (www.oneluckyduck.com) and was based in Brooklyn where employees made some of the foods sold on the website and handled online orders.

8. .      Employees at all of the defendant companies were paid by check or direct deposit. I know this to be true by first-hand knowledge. Wages were paid on a weekly basis. Payday was on Thursday of each week.

9.      All tips, cash and credit card, were pooled and paid to tipped employees in their weekly paychecks. Cash tips were turned over to the managers as they came in during each shift and were recorded in the company's computerized records.

10.     I was paid at a rate of $5.25 per hour as a waiter and bartender, plus tips.

11.     Tips varied throughout the year, from season to season, but typically averaged about $25.00 per hour for tipped employees.

12.     Waiters, bartenders, bussers, runners and hosts participated in the tip pool.

13.     The remaining classifications of employees did not participate. Those include line cooks, expeditors, chefs, pastry chefs, porters, dishwashers, managers and those employed at the e-commerce facility in Brooklyn.

14.     I was a plaintiff in a lawsuit against the same defendants in January of 2015 after Melngialis suddenly stopped paying employees and payroll checks began to bounce. That case was ultimately settled and many of us went back to work for Melngailis in April of 2015 when

the restaurant reopened. I was one of the people who went back to work for her but did not return to work until May.

15.     On or about June 15, 2015, checks started bouncing again and we learned that the company didn't have enough money to make payroll. I know this was also the case at the juice bar and e-commerce facility from speaking with people who were working there at the time.

16.     Melngailis told us to keep working if we wanted there to be money to pay us the wages we had already earned.

17.     Between June 15, 2015 and July 2, 2015, the defendants failed to pay us on time for all wages and tips.

18.     During the last week of operation, some of the cash tips were used to pay the tipped employees, in part, because the managers were concerned that Melngailis would not have enough money in the company's account for payroll.

19.     On July 3, 2015, the restaurant closed and has not reopened since that time.

20.     At the time of closure, and to this date, defendants have not paid any employees for the work performed between June 22, 2015 and July 2, 2015.

21.     I have reviewed the payroll journal that was given to my attorney by Asparagus Trading Company and believe it is accurate. The list contains the names of the individuals who were working for the various companies during the last week of their operation, to the best of my knowledge. Between all of the companies, there are approximately 83 individuals who were not paid for the work they performed for the defendants.

22.     To the best of my knowledge, no one has heard from defendant Melngailis since the first week of July, 2015.

-- 3 --

23. The individuals who have opted into this lawsuit as of the date of this affidavit are mostly people who kept in touch via email and social media. I do not have the contact information for the majority of the people listed on the payroll journal that was provided to my attorney.

24. The company and Melngailis' failure to pay wages for the period of June 22, 2015 through July 2, 2015, impacted all the employees that worked for the various companies listed as defendants in this action. I know this because we all talked about the bouncing checks and the fact that we did not receive our wages for that period. I also participated in several public protests with my coworkers and with my co-plaintiff Daniel Schubmehl. At these protests, we all discussed what happened to us.

25. Specifically, I know that the individuals that have opted-in to this action as of the date of this affidavit were damaged by defendants' failure to pay wages for the period of June 22, 2015 through July 2, 2015.

26. The number of hours worked as listed on the payroll journals appears to be correct. I believe that the amounts owed to me and my coworkers could be calculated by using the information contained in the payroll journal.

27. During the course of my employment with defendants, I have observed that the conditions of work, including method and frequency of payment, were similar for all employees of the defendants in this case, including those that have opted in to this action as of the date of this affidavit. Specifically, defendants failed to pay wages to the individuals who have opted-in to this case for the period of June 22, 2015 through July 2, 2015.

WHEREFORE, it is respectfully urged that the request for conditional certification of a representative class be granted.

-4-

KEVIN WOODS

Sworn to before me this 19th day
of April 2016

NOTARY PUBLIC

BENJAMIN NATHAN DICTOR
Notary Public, State of New York
No. 02DI6296798
Qualified in New York County
Commission Expires Feb. 10, 20__