UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/01/2016
```

-------------------------------------------------------------- X
DANIEL SCHUBMEHL and KEVIN WOODS, :
on behalf of themselves and others similarly :
situated, :
 :
          Plaintiffs, :   15-CV-6432 (VEC)
 :
    -against- :   <u>ORDER</u>
 :
SARMA MELNGAILIS, ONE LUCKY DUCK :
HOLDINGS, LLC, PURE FOOD AND WINE, :
LLC, CGM 54 IRVING, LLC, d/b/a PURE :
FOOD AND WINE, and ONE LUCKY DUCK :
ECOMMERCE, LLC, jointly and severally, :
 :
          Defendants. X
--------------------------------------------------------------

VALERIE CAPRONI, United States District Judge:

  Plaintiffs Daniel Schubmehl and Kevin Woods bring this action on behalf of themselves and others alleged to be similarly situated (collectively, the "Plaintiffs") against Sarma Melngailis, One Lucky Duck Holdings, LLC, Pure Food and Wine, LLC, CGM 54 Irving, LLC, d/b/a Pure Food And Wine, and One Lucky Duck Ecommerce, LLC (collectively the "Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL").  Pending before the Court is Plaintiffs' Motion for Collective Certification Pursuant to 29 U.S.C. § 216(b) (the "Motion").  Defendants have failed to answer or otherwise respond to Plaintiffs' Motion.  For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## BACKGROUND

  Plaintiffs, who worked for Defendants as bartenders and servers at the Pure Food and Wine restaurant located at 54 Irving Place in Manhattan, filed the present action on August 14,

2015. Plaintiffs assert that Defendants are part of a single integrated enterprise that jointly employed them for a common business purpose as defined by FLSA § 203(r). Mem. at 3; Compl. ¶ 19. Plaintiffs state, upon information and belief, that Defendant Melngailis is the sole member of the Defendant businesses within the meaning of New York Limited Liability Company Law § 609, and that Melngailis substantially controlled the payroll and working conditions of employees at the Pure Food and Wine restaurant, the One Lucky Duck juice bar (located on the same premises as the restaurant) and the One Lucky Duck e-commerce business that operated out of a warehouse in Brooklyn. Compl. ¶¶ 17-20; Woods Aff. ¶ 4; Schubmehl Aff. ¶¶ 4, 5, 8, 9. Plaintiffs further assert that Defendants were engaged in interstate commerce and had annual gross sales in excess of $500,000. Compl. ¶ 15, Schubmehl Aff. ¶ 7.

According to Plaintiffs, Defendants failed to pay wages to Plaintiffs and their coworkers for work performed between June 22, 2015 and July 2, 2015, prior to the abrupt closure of Defendants' businesses on or around July 3, 2015. Mem. at 1; Schubmehl Aff. ¶¶ 20, 22; Woods Aff. ¶¶ 19-20. During this period, Melngailis encouraged Plaintiffs and their coworkers to continue working and promised that their wages would be paid. Schubmehl Aff. ¶¶ 19, 23; Woods Aff. ¶¶ 16, 20. Plaintiffs learned from other employees at the juice bar and e-commerce locations that they also received paychecks that bounced for work performed during this period. Woods Aff. ¶ 15. Following the closure of the Defendant businesses, Melngailis disappeared and ceased all communication with her former employees. Schubmehl Aff. ¶ 25; Woods Aff. ¶ 22.

In support of their Motion, Plaintiffs have submitted Affidavits stating that they have reviewed Defendants' payroll records for the period from June 22, 2015 through July 2015, and determined that approximately 83 individuals were not paid for their work during that time period. Schubmehl Aff. ¶ 24; Woods Aff. ¶ 21. Although Plaintiffs were unable to obtain

contact information for all 83 employees, they provided notice of their lawsuit to former employees for whom they had contact information. To date, eighteen (18) such former employees have filed consent forms seeking to be recognized as plaintiffs in this action (the "Opt-In Plaintiffs"). Dkts. 6-11, 14, 17-25, 39, 47, 50. Plaintiffs have compared Defendants' payroll records with the list of Opt-In Plaintiffs, and they believe that the payroll records provide accurate information regarding the hours worked by the Opt-In Plaintiffs during the period of non-payment. Schubmehl Aff. ¶¶ 24, 26, 30; Woods Aff. ¶¶ 21, 26. Plaintiffs assert that the Opt-In Plaintiffs are all similarly situated to them because they were all denied payment for hours worked between June 22, 2015 and July 2, 2015. Schubmehl Aff. ¶¶ 24, 26, 29, 30, 31; Woods Aff. ¶¶ 21, 23-27. Plaintiffs therefore seek to certify a collective consisting of all of the Opt-In Plaintiffs. *See* Mem. at 1 (seeking to certify "all former employees of defendants who were not paid the minimum wage by defendants for hours worked during the period of June 22, 2015 through July 2, 2015 and who have filed the requisite consent forms with this Court as of April 22, 2016").

## DISCUSSION

### I. Relevant Legal Standard

FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). In determining whether to certify a collective action under Section 216, this Court conducts the two-step analysis endorsed by the Second Circuit in *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). This two-step analysis consists of (a) conditional certification and (b) certification. *See id.* "As the Second Circuit has recently observed, however, this process is entirely discretionary." *Gonyer v. Vane Line Bunkering, Inc.*, 32 F. Supp. 3d 514, 516 (S.D.N.Y. 2014) (citing *Myers*, 624 F.3d at 554).

> [T]he "certification" we refer to here is only the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such [notice] device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when [court] notice . . . has not been sent, so long as such plaintiffs are "similarly situated" to the named individual plaintiff who brought the action.

*Myers*, 624 F.3d at 555 n.10 (citations omitted).

Thus, the granting of conditional certification is not a necessary preliminary step before plaintiffs seek actual certification as a collective class.

### A. Conditional Certification

At the "notice stage," plaintiffs must establish that other employees "may be 'similarly situated'" to them. *Id.* at 555 (citation omitted). To meet their burden, plaintiffs must "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted). Although a plaintiff's burden is modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518(JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014), and generally cannot be satisfied by unsupported assertions, *Myers*, 624 F.3d at 555 (citation omitted). Nonetheless, courts employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original) (citation omitted). Accordingly, at this first stage, courts do not examine "whether there has been an actual violation of law . . . ." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, No. 93 CIV. 0178(LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists." (alteration in original))).

### B. Certification

At the second stage of the analysis, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* similarly situated . . . ." *Myers*, 624 F.3d at 555 (emphasis added). If, based on the record, the court determines that the opt-in plaintiffs are not similarly situated to the named plaintiffs, the action may be "de-certified," and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.* At the second stage, "[t]he court must apply a more stringent standard of proof . . . for determining whether plaintiffs are similarly situated for purposes of the FLSA." *Morano v. International Capital Grp., Inc.*, No. 10 Civ. 2192, 2013 WL 474349 at *2 (S.D.N.Y. Jan. 25, 2013) (internal quotation marks and citation omitted).

Although the Second Circuit has not prescribed any particular method for determining whether members of a class are similarly situated at this stage, *see Ruiz v. Citibank*, 93 F. Supp. 3d 279, 298 (S.D.N.Y. 2015), district courts typically look to "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations for or against [collective action treatment]." *Elfoulki v. Brannons Sandwich Shop, LLC*, No. 14-cv-5964(PKC), 2016 WL 1736203, at *2 (S.D.N.Y. May 2, 2016) (quoting *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011)).

### II.   Application

Due to difficulties in obtaining contact information for Defendants' former employees that would be necessary for court notice as a prelude to conditional certification, Plaintiffs seek to proceed to the second step and certify this case as a collective action for the individuals who have already opted-in. As discussed above, this is permissible because conditional certification is not required before seeking actual certification. Consequently, the Court will skip step-one of

the *Myers* analysis and will proceed to determine whether Plaintiffs have met their burden under the second step described in *Myers*.

Although Plaintiffs were employed in different roles and at different locations within Defendants' business, they are similarly situated for purposes of *Myers* because they all claim the same injury and seek the same remedy. Plaintiffs have reviewed Defendants' payroll journal and confirmed that it is an accurate representation of the hours worked by the Opt-In Plaintiffs. Plaintiffs have also confirmed that the Opt-In Plaintiffs are similarly situated in that they are owed at least minimum wage for hours worked between June 22, 2015 and July 2, 2015. In the absence of evidence to the contrary (and, because Defendants have failed to appear, there is not even a proffer of any contrary evidence), the Court concludes that Plaintiffs have demonstrated by a preponderance of the evidence that the Opt-In Plaintiffs are "in fact" similarly situated to the named Plaintiffs.

Furthermore, the Court is aware of no defense available to Defendants that would be unique to any Plaintiff or Opt-In Plaintiff. Their claims emanate from a single course of conduct on the part of Defendants: the failure to pay wages for the weeks preceding the sudden closure of Defendants' businesses.

Finally, the Court is unaware of any procedural or fairness considerations that would weigh against collective certification; indeed, because Defendants have failed to appear or oppose the Motion, all such considerations weigh in favor of certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is GRANTED. The Clerk of Court is respectfully requested to close the open motion at docket entry 56. Not later than August 22, 2016, Plaintiffs shall either move for default against the Defendants or file a letter updating the

Court as to their plans for furthering the litigation.

**SO ORDERED.**

Date:  August 1, 2016  **VALERIE CAPRONI**
       New York, New York  **United States District Judge**